UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SKYLER ALLEN WOODS,

      Plaintiff,

      v.                                    CAUSE NO. 3:25cv426 DRL-SJF

KENNETH GANN, CHARLES HERR,
BRADFORD, DEU,

      Defendants.

<u>OPINION AND ORDER</u>

Skyler Allen Woods, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Woods alleges he was repeatedly physically assaulted by other offenders at the Westville Correctional Facility (WCF) beginning in mid-April 2024. He began filling out requests for protective custody in early May and was transferred around to various

locations within the facility but was "still being physically assaulted on every dorm [he] went to." ECF 1 at 3. Sometime later that month, he was sexually assaulted. He again submitted requests to be transferred to protective custody but was denied multiple times. The assaults continued. At some point, he was told to report to "8 center dorm of the GSC complex," but Mr. Woods refused. *Id*. He was "roughed up" by Lt. Deu and forced onto the dorm where he was again sexually assaulted. *Id*. Mr. Woods reported the additional assault to Lt. Bradford and other investigators. He was not given protective custody status. The assaults took a toll on his mental health, and he attempted suicide twice in a four-day period. Finally, around June 24, 2024, Mr. Woods was placed in protective custody.

Not long afterwards, the protective custody unit at WCF was "shut down due to structural issues." *Id*. at 4. Mr. Woods was transferred to a minimum-security level 1 unit within WCF where his "safety and security issues continued." *Id*. He was moved several times due to his continued security issues. In early August 2024, Mr. Woods was "brought back inside the fence and forced back into general population." *Id*. He was assaulted, so he was placed into a holding cage in GSC complex. Despite telling Cpt. Herr and Lt. Bradford that he wouldn't be safe if he was moved, he was "forced" onto 3-dorm. *Id*. Within half an hour, he was taken out of that dorm by the night sergeant "due to having been jumped on [b]y multiple inmates" and suffering an elbow injury. *Id*. "After multiple refusals to go to dorms, multiple assaults, and 11 more PC requests, as well as two suicide attempts . . . [he] was placed in ECU/RHU segregation." *Id*. Mr. Woods's refusals resulted in conduct reports for "interfering with staff," so he spent four-and-a-half months in

2

segregation before being transferred back to the new protective custody dorm in January 2025. He has sued Deputy Warden Gann—whom he describes as being in charge of operations and protective custody placement requests—Captain Charles Herr, Lt. Bradford, and Lt. Deu for monetary damages.[1]

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (ellipsis omitted). That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quotations, brackets, and citations omitted). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will

---

[1] He also seeks injunctive relief in the form of being transferred to a different facility, but that request is moot as he has recently been transferred to the Indiana State Prison. *See* ECF 23. Thus, the court will only analyze his monetary damages claims in this order.

support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' does not necessarily correlate to a 'substantial risk'"). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Here, Mr. Woods describes a pattern of requests for help followed by numerous physical and sexual assaults. He claims Deputy Warden Gann—whom he says was in charge of prison operations and protective custody requests/placement—received but repeatedly refused his pleas for protective custody status and directed the officers to "force" him into other dorms that put him in harms way. Mr. Woods doesn't elaborate on the requests or identify his assailants, but the sheer number of alleged assaults gives

4

rise to an inference of deliberate indifference. Although Mr. Woods will need to prove both that Deputy Warden Gann was aware of a specific risk of harm and purposefully disregarded it, *see, e.g., Farmer*, 511 U.S. at 837 and *Lewis*, 107 F.3d at 554, the court will give him the benefit of all reasonable inferences at this early stage and allow him to proceed against Deputy Warden Gann in his individual capacity.

The claims against the remaining defendants do not fare as well. He alleges he was "roughed up" by Lt. Deu and forced onto a different dorm after refusing a new housing assignment, but this claim is too sparse to state a plausible claim. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.") (citing *Ashcroft*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")). Similarly, he says he told Cpt. Herr and Lt. Bradford that he wouldn't be safe sometime in August 2024, but they "forced" him onto 3-dorm in anyway. Even putting aside the sparsity of these allegations, *see id.*, it isn't reasonable to infer their actions were deliberately indifferent because Mr. Woods specifically alleges Deputy Warden Gann was the one who refused his protective custody status and directed "his officers [to] force [him] onto dorms being put in danger." ECF 1 at 4. According to Mr. Woods himself, the officers were simply following the orders of Deputy Warden Gann rather than being deliberately indifferent to his needs. Thus, the claims against the officers will be dismissed.

For these reasons, the court:

5

(1) GRANTS Skyler Allen Woods leave to proceed against Deputy Warden Gann in his individual capacity for compensatory and punitive damages for being deliberately indifferent to his safety and failing to protect him from multiple attacks by other inmates from May 2024 through January 2025 in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Charles Herr, Bradford, Deu;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Deputy Warden Gann at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Deputy Warden Gann to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

July 27, 2026

_s/ Damon R. Leichty_
Judge, United States District Court

6